U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB - 2 2012
CLERK, U.S. DISTRICT COURT
by_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ERNEST AND JOANN SEXTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-909-A |
| | § | |
| PARKER COUNTY, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court are two motions for summary judgment filed in the above action: one by defendant Che Loa ("Loa"), and one by defendants Parker County ("County"), Tim Oglesby ("Oglesby"), Anne Hollis ("Hollis"), and James Mike Humphreys ("Humphreys") (collectively, "County Defendants"). Plaintiffs, Ernest and Joann Sexton, filed a single response to both motions, titled "Reply to Motions of All Defendants for Summary Judgment," as well as a document titled "Reply to Defendants Comment on Papers for Bankruptsy [sic]." Having now considered all of the parties' filings, the entire summary judgment record, and applicable legal authorities, the court concludes that the motions should be granted.[1]

---

[1] While the motions for summary judgment were pending, plaintiffs filed a motion for appointment of counsel. Given the court's disposition of the summary judgment motions, the motion for appointment of counsel is denied as moot.

I.

Background and Plaintiffs' Claims

Loa is employed as a police officer by the city of Weatherford, Texas ("City"). At the time the events giving rise to this action occurred, Oglesby, Hollis, and Humphreys were all employed as peace officers with the Sheriff's Office of County.

Plaintiffs initiated this action by the filing on December 1, 2010, of their original complaint pursuant to 42 U.S.C. § 1983. Plaintiffs claim defendants arrested them, searched and ransacked their home, and took five firearms, a quart-size jar of silver dollars, and two gold necklaces from the home. The original complaint contained additional allegations and parties, which the court dismissed by order signed March 4, 2011, specifying that the only remaining cognizable claims were those pertaining to seizure and removal of items from plaintiffs' home.

II.

The Summary Judgment Motion

County Defendants argued for summary judgment on the grounds that plaintiffs: were arrested pursuant to a valid warrant; failed to allege facts sufficient to state a claim for excessive force; consented to the search of their home; claim the seized firearms do not belong to them and so lack standing to sue for their alleged seizure, or alternatively, the firearms were seized

2

under the plain view doctrine; and, no evidence exists that the silver dollars and jewelry existed or were seized by defendants.[2] County Defendants further argued that claims against Oglesby, Hollis, and Humphreys in their official capacities are suits against County and should be dismissed as redundant, and that claims against County should be dismissed for failure to state a claim, failure to allege a custom or policy, and failure to establish a constitutional violation.

Loa argued for summary judgment on the grounds that: there is no genuine issue of material fact, and evidence establishes as a matter of law, that Loa did not seize the firearms, necklaces, or jar of coins, and plaintiffs have produced no evidence to the contrary; to the extent Loa is sued in his individual capacity, he is entitled to qualified immunity; to the extent Loa is sued in his official capacity, such is a suit against Loa's employer, City, and plaintiffs have produced no evidence of a custom, policy, or practice that caused any alleged constitutional deprivation; to the extent plaintiffs' claims can be construed as arising under state tort law, those claims against Loa in his official capacity are barred by sovereign immunity, and in his

---

[2] As the March 4, 2011 order limited plaintiffs' claims and causes of action to "those arising from the allegations pertaining to the removal of items from plaintiffs' home by unnamed officers. . . .", March 4, 2011 Order at 3, the court need not consider County Defendants' arguments concerning claims of a warrantless arrest or excessive force. However, the court considers that the grounds of the motion as to those subjects are meritorious and that summary judgment would be warranted on those claims for the reasons set forth in County Defendants' brief.

3

individual capacity, are barred by § 101.106 of the Texas Civil Practice & Remedies Code; and, plaintiffs have produced no evidence of value or monetary damages concerning the alleged missing necklaces or jar of coins.

### III.

### Undisputed and Disputed Facts

A. Undisputed Facts

Plaintiffs were required to register as sex offenders as a result of prior convictions.[3] In January 2009, Oglesby received information that the Sheriff's Office of County had issued felony arrest warrants for plaintiffs due to their failure to register as sex offenders. As part of his routine procedure, Oglesby obtained criminal history information on plaintiffs prior to serving the warrants. Oglesby learned that Ernest had a criminal history that included sexual abuse, sexual assault, two prior escapes, felony theft, bail jumping, probation violation, and grand theft. Oglesby also learned of Joann's conviction for lewd or indecent proposal to a child in Oklahoma, where she was sentenced to eleven years' incarceration. Based on his training

---

[3] On March 22, 2004, Ernest was convicted of sexual assault in the fourth degree in Lawrence County, Arkansas, the equivalent to indecency with a child by contact, a sexually violent offense in the State of Texas. On February 24, 1993, Joann was convicted of lewd or indecent proposal to a child under sixteen years of age, equivalent to criminal solicitation of a child, a sexually non-violent offense in the State of Texas. Ernest was required to register as a sex offender annually on his date of birth for life. Joann was required to register annually on her date of birth for ten years following her release from probation, which was February 24, 2004. Ernest was required to notify local law enforcement seven days prior to moving, and both Ernest and Joann were required to notify local law enforcement within seven days of relocating.

and experience, Oglesby believed Ernest was a danger to children and an extreme flight or escape risk.

Oglesby then briefed other members of the Parker County Fugitive Apprehension Strike Team ("FAST"), which included Humphreys, Hollis, Loa, and another individual not a party to this action. Oglesby obtained information regarding plaintiffs' vehicle, which Oglesby learned was at that time at a school in Weatherford, Texas, where Joann was working as a janitor.

Oglesby instructed FAST team members to establish surveillance on plaintiffs' vehicle at the school. Hollis and the other officer observed Joann enter the car and leave the school. Oglesby decided to follow Joann and approach her when she stopped away from the school.

Oglesby, Humphreys and Loa established surveillance on a location they had learned was plaintiffs' residence. When Joann pulled her car into the driveway, Oglesby also pulled in and identified himself to Joann as a police officer. When Joann confirmed her identity, Oglesby arrested and handcuffed her, and left her in Hollis's custody. Upon Oglesby's inquiry, Joann confirmed that Ernest was inside the residence. Oglesby then knocked on the front door, announced "police," and drew his weapon. The door was opened by an older white female, who has been identified in papers filed in this action as Rosa Dyer ("Dyer"), the mother-in-law of one of the plaintiffs.

Oglesby identified himself as police, advised that he had a warrant for the arrest of Ernest, asked where Ernest was, and was directed to the bedroom. Oglesby and Loa entered the residence into the living room and saw Ernest standing inside. The officers instructed Ernest to lie down on the floor; he complied and was handcuffed by the officers.

The officers then conducted a sweep of the residence as a safety precaution. In the bedroom directly off the living room officers saw a revolver pistol in plain view on a night stand, as well as a gun cabinet that contained several long guns in it.

Ernest was escorted outside, where Oglesby spoke with him and Joann separately. Joann acknowledged that the bedroom where the guns were found was her and Ernest's bedroom. Oglesby informed plaintiffs that they were prohibited by law from possessing firearms since they were convicted felons. Plaintiffs each signed a consent-to-search form.

Oglesby and Hollis returned to search Ernest and Joann's bedroom and inspect the firearms, all of which were found to be loaded with live ammunition. The officers unloaded the weapons and left the ammunition on the bed. The weapons were taken outside and placed on the tail gate of Oglesby's truck. Oglesby and Hollis identified each weapon by serial number and description on a County property receipt form. Oglesby reviewed this document with plaintiffs; they signed the property receipt

and were given a copy. Oglesby then placed the firearms in the back seat of his county vehicle, transported them to the Sheriff's Office, and placed them in the property collection box.

B. <u>Disputed Facts</u>

Although the following facts are in dispute, they are included here to provide context for the remainder of this memorandum opinion and order.

Plaintiffs allege that following the search of the their home by the defendants they discovered that a quart-size jar of silver dollars and two gold necklaces were missing. Plaintiffs maintain that these items were in a dresser beside the bed from which the defendants also took one of the firearms. Defendants deny that any of them saw the quart jar of silver dollars or the gold necklaces in plaintiffs' residence and deny that any of them removed such items.

IV.

<u>Applicable Summary Judgment Principles</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

V.

Analysis

A. County Defendants

1. Firearms

County Defendants argue that plaintiffs lack standing to bring § 1983 claims as to the firearms because plaintiffs have

8

affirmatively alleged that the firearms belong to others, and also argue that seizure of the firearms was lawful under the plain view doctrine. The court is satisfied that plaintiffs lack standing to challenge the seizure of the firearms.

Fourth Amendment rights are personal, and only the person who suffered an infringement may enforce those rights. United States v. Pack, 612 F.3d 341, 347 (5th Cir. 2010) (citing Rakas v. Ill., 439 U.S. 128, 139 (1978)). Thus, in the context of allegations of Fourth Amendment violations, the term "standing" has often been used by courts as "shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim." United States v. Daniel, 982 F.2d 146, 149 n.2 (5th Cir. 1993).[4] In other words, claims of Fourth Amendment violations may not be maintained when based on the alleged unlawful seizure of a third person's property. See, e.g., Rakas, 439 U.S. at 134; Daniel, 982 F.2d at 149 (defendant had no Fourth Amendment standing to challenge government's seizure of package addressed to someone else).

---

[4] As explained by the Fifth Circuit:
Because Fourth Amendment rights are personal, the Supreme Court has stated that there is no useful analytical purpose to be served by considering a matter of standing distinct from the merits of a defendant's Fourth Amendment claim... Despite this admonishment, for brevity's sake, courts often refer to the question of whether or not a defendant is asserting a violation of his own Fourth Amendment rights as one of "standing."

United States v. Pack, 612 F.3d 341, 347 (5th Cir. 2010) (internal citations and quotation omitted).

In the complaint, plaintiffs disavowed ownership of any of the seized firearms. Plaintiffs alleged that four of the firearms belong to their two sons, and that the firearms were in plaintiffs' possession for safekeeping. Supporting this contention are letters in the summary judgment record from plaintiffs' children, with each child claiming ownership of two of the firearms at issue. Plaintiffs also claimed that the fifth weapon belonged to a neighbor. Having alleged no ownership interest in the firearms, plaintiffs have no standing to now challenge their seizure.[5]

Summary judgment is also warranted as to plaintiffs' claims concerning disposition of the firearms. In his affidavit Oglesby stated that he transported all of the firearms to the Sheriff's Office and placed them in the property collection box, and provided a copy of the property receipt with his signature. Plaintiffs have offered no controverting evidence.

2. <u>Silver Dollars and Gold Necklaces</u>

County Defendants deny ever seeing the quart jar of silver dollars and the gold necklaces, and all deny removing such items from plaintiffs' residence. No summary judgment evidence exists that contravenes County Defendants' affidavits or that places the

---

[5]Seizure of the firearms is also justified based on the undisputed summary judgment evidence showing plaintiffs consented to the search of their residence. Further, because the officers first noticed the firearms during their protective sweep of the residence following Ernest's arrest, seizure of the firearms is also justified under the "plain view" doctrine. See United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005); United States v. Munoz, 150 F.3d 401, 411 (5th Cir. 1998)

silver dollars and gold necklaces in plaintiffs' residence at the time of their arrest.

The affidavits of Ernest and Dyer attached to the complaint allege only that certain unspecified items were missing following the defendants' search of plaintiffs' residence. Defendants also provided a copy of Ernest's appeal pertaining to jail time received following the arrest on January 13, 2009; although the appeal specifically mentions the firearms plaintiffs claim were unlawfully seized, nothing therein mentions the silver dollars or gold necklaces or even that other, unspecified items were missing following Ernest's arrest.

Based on the summary judgment record now before the court, the court concludes that no reasonable juror could find that any of the defendants took any of the items plaintiffs have alleged were taken.[6]

B. County

It is well-settled that a local government entity such as County cannot be held liable for the acts of its employees solely on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). Liability may be imposed

---

[6] Also attached to the complaint is an unsigned, unsworn document purporting to be an affidavit by Joann that specifically mentions the silver dollars and gold necklaces, and County Defendants' evidence includes a document purportedly signed by Dyer that also mentions those items. However, neither of these documents was signed under oath or penalty of perjury, among other defects, and the court concludes they are not competent evidence sufficient to defeat summary judgment.

11

against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692) (internal quotation marks omitted). Liability against such a defendant pursuant to § 1983 thus requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). The allegation of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997).

Here, plaintiffs have failed to allege, or adduce summary judgment evidence of, any official policy of County, much less one that was the moving force behind any constitutional violation. Accordingly, claims against County are dismissed. Further, to the extent plaintiffs allege claims against County Defendants in their official capacities, such are actually claims against County, Monell, 463 U.S. at 690 n.55, and such claims are dismissed.

C.  Loa

1.  Firearms

For the reasons discussed in section V.A.1., supra, plaintiffs' claims against Loa regarding seizure of the firearms are dismissed.

2.  Remaining Claims and Qualified Immunity

Loa has raised the affirmative defense of qualified immunity. The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, the court must answer two questions: First, do the facts shown by the plaintiff demonstrate that the defendant violated a constitutional right? And, second, was the right clearly established such that it would have been clear to a reasonable officer in the defendant's position that his conduct was

13

unlawful? Id. at 232;[7] Mace v. City of Palestine, 333 F.3d 621, 623-24 (5th Cir. 2003). At the summary judgment stage, the plaintiff "can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting" the qualified immunity analysis. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (ellipses in original) (internal citation omitted).

Instead, the plaintiff bears the burden of rebutting the claim of qualified immunity. Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004). If the facts shown by plaintiff do not make out a violation of a constitutional right, or, if the right was not clearly established, the defendant is entitled to qualified immunity. Pearson, 555 U.S. at 232; Johnson, 379 F.3d at 301.

The court is satisfied that Loa is entitled to qualified immunity on plaintiffs' claims concerning seizure of the jar of silver dollars and the gold necklaces. Viewing the summary judgment evidence in the light most favorable to plaintiffs fails to show a violation by Loa of plaintiffs' constitutional rights. None of the papers filed by plaintiffs in this action appear to mention Loa, except a single statement in plaintiffs' response to

---

[7] Following the Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223 (2009), the court may use its discretion in determining which of the qualified immunity prongs to address first.

the summary judgment motions that Loa saw the firearms lying on the tailgate of a pickup.[8] The response also focuses on conversations concerning the missing property that plaintiffs had with the sheriff and other employees of County concerning whether their property had been turned in to County. Loa was an employee of City and there are no factual allegations to show he had any involvement with County beyond his participation on the FAST team. Plaintiffs have the burden to establish the inapplicability of Loa's qualified immunity defense, McClendon, 305 F.3d at 323, but have failed to do so. Thus, the court is granting summary judgment to Loa on plaintiffs' claims against him in his individual capacity.

 3. Claims Against Loa in His Official Capacity

Claims against an officer in his official capacity are actually claims against his employer--here, City. Monell, 436 U.S. at 690 n.55 (1978). For the reasons discussed in section V.B, supra, concerning dismissal of plaintiffs' claims against County, all claims against Loa in his official capacity, considered to be claims against City, are also dismissed.

 4. State Law Claims

Out of an abundance of caution, Loa also argued for dismissal of plaintiffs' claims to the extent they could be

---

[8]This statement is not in Loa's affidavit, nor is it in found in the affidavits of any of the County Defendants. Plaintiffs do not identify the source of this information.

construed as state law torts such as trespass to chattels or conversion. The court has not construed the complaint as alleging such claims against the defendants. Were the court to do so, however, it would find dismissal of such claims warranted for the reasons discussed in Loa's brief.

## VI.

### Order

Therefore,

The court ORDERS that Loa's and County Defendants' motions for summary judgment be, and are hereby, granted, and that all claims and causes of action brought by plaintiffs, Ernest and Joann Sexton, against Loa and County Defendants be, and are hereby, dismissed with prejudice.

SIGNED February 2, 2012.

JOHN McBRYDE
United States District Judge